**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANETTE CORBY,<br><br>    Plaintiff,<br><br>  v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA as Administrator and Fiduciary of the Wink Communications, Inc., Long Term Disability Plan; WINK COMMUNICATIONS, INC., LONG TERM DISABILITY PLAN; and WINK COMMUNICATIONS, INC.,<br><br>    Defendants.<br>_____ / | No. C 09-5890 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this disability-benefits action, plaintiff Janette Corby sued defendants Unum Life Insurance Company of America, Wink Communications, Inc., Long Term Disability Plan, and Wink Communications, Inc., under the Employment Retirement Income Security Act. Ms. Corby claimed that Unum, the claims administrator for the plan, wrongfully terminated her long-term disability benefits. Defendants now move for summary judgment on the ground that Unum's termination decision was proper because Ms. Corby is not disabled and alternatively because her claimed disabilities were either based on self-reported symptoms or due to mental illness. For the reasons stated below, defendants' motion is **GRANTED**.

**STATEMENT**

Plaintiff is a breast-cancer survivor. She was diagnosed with breast cancer in September 2002, and treatment during 2003 was successful in eradicating the cancer. Unum paid her long-term disability benefits from December 2002 through December 2008, at which time benefits were terminated because she was no longer disabled, and because under the terms of the benefits plan, disability due to self-reported symptoms or mental illness were limited to 24 months of benefits. She was 49 when benefits began and is now 56.

When plaintiff was diagnosed with breast cancer, she was the Senior Vice President of Sales for National Accounts for Wink Communications, Inc. Wink Communications had long-term disability insurance to fund the Wink Communications Long Term Disability Plan for its eligible employees. Wink Communications has since been acquired by OpenTV (*see* AR 810–11). Defendant Unum both decided who was entitled to benefits and paid for benefits under the terms of the plan (*see* AR 76).

The plan defined "disability" as follows: "you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury" (*ibid.* (bold omitted)). "Regular occupation" was defined as "the occupation you are routinely performing when your disability begins . . ." (AR 96). Certain disabilities had a limited pay period under the terms of the plan. The plan specified: "Disabilities, due to sickness or injury, which are primarily based on **self-reported symptoms**, and disabilities due to **mental illness** have a limited pay period up to 24 months" (AR 81). Furthermore, "self-reported symptoms" was defined as "the manifestations of your condition which you tell your physician, that are not verifiable using tests, procedures or clinical examinations standardly [sic] accepted in the practice of medicine. Examples . . . include, but are not limited to . . . pain, fatigue . . . and loss of energy" (AR 97). Lastly, "mental illness" was defined as "a psychiatric or psychological condition regardless of cause such as . . . depression . . . These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment" (AR 95).

2

1    Plaintiff filed a claim for disability benefits with Unum, and Unum approved her claim
2    on December 26, 2002 (AR 319–21). During the next year, plaintiff underwent two surgeries,
3    chemotherapy, and radiation treatment. She continued with drug treatment to prevent and
4    inhibit the recurrence of cancer. It is undisputed that plaintiff experienced physical symptoms
5    due to this drug treatment, including fatigue, muscle and joint pain, and memory loss. She saw
6    a psychiatrist intermittently for depression.

7    As of the beginning of 2007, plaintiff was taking Tamoxifen to prevent the recurrence of
8    breast cancer. She continued to report joint pain and fatigue to her oncologist, Dr. Bobbie
9    Head, and also told Dr. Head that since starting Tamoxifen "she has become increasingly
10   depressed" (AR 1151). In April 2007, she notified Unum that she had begun selling real estate
11   for "1-2 hours a day when able and symptoms allow" (AR 1137). A month later, Dr. Head sent
12   a note to Unum that "she is having trouble returning to full-time work" because she "continues
13   to have bone and joint pain. Her primary complaint is bone numbing fatigue" (AR 1149).
14   Plaintiff again reported that she was working "1-2 hours per day as an independent contractor in
15   real estate as symptoms permit," in December 2007 (AR 1222–23). Dr. Head provided another
16   attending physician statement in January 2008, that included: "[patient] states continuing
17   fatigue, joint pain, insomnia," and "[patient] referred to psychiatrist for help with sleep and
18   depression" (AR 1219–20). The next month, Dr. Head reported that plaintiff said she
19   "continues to suffer from cyclic depression . . . sleeping problems and anxiety, joint pain,
20   memory loss, and major fatigue" (AR 1665). Finally, in September 2008, Dr. Head wrote that
21   plaintiff was "enduring hot flashes" and fatigue, but that she was "working in a job flexible
22   enough to allow her to rest during the day if she needs to" (AR 1899).

23   Plaintiff was in contact with her psychiatrist, Dr. Krause, only once between April 2006
24   and July 2008, in September 2007 (AR 1858). At that time Dr. Krause noted: "[patient] seen in
25   25 minute session and meds received . . . noted some improvements" (AR 1840).

26   In October 2008, Unum in-house physician Dr. James Bress submitted a report based on
27   his review of plaintiff's medical records; it concluded that "with a reasonable degree of medical
28   certainty [plaintiff] is capable of full time light work" (AR 1931–37). Plaintiff's file was

3

1 referred to a second reviewing physician, Dr. Joseph Sentef (AR 1980). Dr. Sentef reviewed
2 plaintiff's medical records and concluded that plaintiff "would be able to work a light duty
3 occupation on a full time basis, 8 hours per day and 40 hours per week" (AR 1987–88). An
4 occupational assessment for a real estate agent was also completed (AR 2038–40). Unum
5 requested this assessment "to outline the physical demands and material and substantial duties
6 of [plaintiff's] current occupation for comparison against her pre-disability occupation" (AR
7 2004).

8 Unum also requested further review by Drs. Bress and Sentef concerning the fatigue
9 reported by plaintiff (*ibid.*). Dr. Bress found that "[t]here is no evidence that the fatigue or
10 depression have risen to the level of impairment since 1/1/04," and "there is no substantiation
11 for a physical cause of her fatigue since 1/1/04" (AR 2016). Dr. Sentef concurred with Dr.
12 Bress and stated that plaintiff's fatigue "appear[ed] to be attributed to the depression rather than
13 a physical cause" (AR 2050).

14 On December 17, 2008, Unum wrote to plaintiff to inform her that it had decided to
15 terminate her benefits (AR 2108–17). On July 10, 2009, plaintiff appealed Unum's decision
16 (AR 2172–74). Plaintiff's letter of appeal attached new medical records, including reports from
17 Drs. Bobbie Head and Laura Duffy and records from UCSF Medical Center. Thereafter, a third
18 reviewing physician, Dr. Herbert Dean, reviewed plaintiff's file, including the new evidence.
19 He concluded that he "concur[red] with [Dr. Bress's] opinion and [Dr. Sentef's] assessment that
20 there is no evidence of breast [cancer] recurrence or presence of physical side effects that
21 prevent her from full time light duty type work" (AR 2312). On July 30, 2009, Unum wrote to
22 plaintiff to inform her that after appeal it had decided to uphold its initial decision to terminate
23 benefits, because plaintiff "has received the maximum benefits payable under the policy for a
24 disability primarily based on self reported symptoms, and she was determined not to be disabled
25 from a sickness or injury" (AR 2319). This action followed.

**ANALYSIS**

27 Summary judgment is proper when the "pleadings, depositions, answers to
28 interrogatories, and admissions on file, together with the affidavits, show that there is no

4

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and a fact "material" only if it may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). All reasonable inferences, however, must be drawn in the light most favorable to the non-moving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). That said, unsupported conjecture or conclusory statements cannot defeat summary judgment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

Plaintiff's complaint states three claims. One seeks to "recover benefits due [] under the terms of [the] plan, [and] to enforce [] rights under the terms of the plan." 29 U.S.C.A. 1132(a)(1)(B). The second seeks to "enjoin any act or practice which violates [ERISA] or the terms of the plan, or [] to obtain other appropriate equitable relief." 29 U.S.C.A. 1132(a). Plaintiff "concedes that [this] claim . . . cannot be maintained" (Opp. 21). The third seeks relief for the plan administrator's "refusal to supply requested information." 29 U.S.C.A. 1132(a)(1)(A). For the two remaining claims, three issues must be resolved by this order: (1) what standard of review should apply to plaintiff's claim, (2) whether the denial of benefits was unlawful, and (3) whether plaintiff is due penalties for the plan administrator's failure to supply certain requested information.

**A.     Standard of Review**

A *de novo* standard of review will apply to actions for the recovery of ERISA benefits, unless the plan in question grants discretionary authority to the trustee or fiduciary. *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 114–15 (1989). If a plan unambiguously grants the plan administrator discretionary authority to construe the plan's terms, the appropriate standard of review is for abuse of discretion, with any conflict of interest included as a factor to be taken into account in deciding whether the discretion has been abused. *Metro. Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2347–48 (2008).

The plan at issue in this dispute contained the following provision in the certificate section: "When making a benefit determination under the policy, Unum has discretionary

5

1  authority to determine your eligibility for benefits and to interpret the terms and provisions of
2  the policy" (AR 72).  Given this statement, there can be no dispute that Unum had the
3  discretionary authority to adjudicate claims for benefits under the plan at issue.  As such, it is a
4  fiduciary under ERISA, and an abuse of discretion standard applies to plaintiff's claim.  *See*
5  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963–65 (9th Cir. 2006) (en banc).

6  Plaintiff nevertheless argues that *de novo* review should apply because the certificate
7  also states "[i]f the terms and provisions of the certificate of coverage (issued to you) are
8  different from the policy (issued to the policyholder), the policy will govern" (AR 72).  This
9  argument is rejected.  *First*, there is not a contrary term or provision in the policy.  *Second*,
10 plaintiff herself states later in her opposition that "[she] believes that the language set forth in
11 the certificate is sufficient to confer discretion on the plan administrator . . ." (Opp. 16).  *Third*,
12 the certificate of coverage was the document issued to plaintiff (*see* AR 72), so it is the relevant
13 document to whether plaintiff was on notice that Unum had discretionary authority.  The
14 decisions cited by plaintiff (Opp. 11), are in accord with this principle.  Plaintiff cites no
15 decisions requiring that a discretionary clause be set forth in particular place among the plan
16 documents.  The clause noted above unambiguously grants discretionary authority to Unum to
17 interpret the terms of the plan and determine eligibility for any entitlement to plan benefits.

18 Even so, a highly deferential review will not apply.  *Standard Ins. Co. v. Morrison*, 584
19 F.3d 837, 848 (9th Cir. 2009).  In situations in which an ERISA fiduciary both decides who is
20 entitled to benefits and pays for benefits, there is a direct financial incentive for the fiduciary to
21 deny claims.  *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 868 (9th
22 Cir. 2008).  Unum is such a fiduciary (*see* Opp. 16; Reply 5 (contrasting "structural conflict of
23 interest" with "actual conflict of interest," which defendants argue did not exist)).  When there
24 is a structural conflict of interest, the standard is not whether the fiduciary's decision was
25 "grounded on any reasonable basis."  Rather, the court must perform a more "complex analysis"
26 of "case-specific factors" including (1) the extent to which a conflict of interest appears to have
27 motivated an administrator's decision, (2) the quality and quantity of the medical evidence,
28

6

(3) whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records, and (4) whether the administrator provided its independent experts with all of the relevant evidence. *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629–32 (9th. Cir. 2009) (quotations and citations omitted).

**B.      Denial of Benefits**

Under the *Montour* factors, Unum did not abuse its discretion when it found that plaintiff was no longer entitled to benefits under the terms of the plan as of December 17, 2008.

**1.      Conflict of Interest**

Since Unum both decides entitlement to benefits and funds approved benefits, this order must give serious consideration to whether Unum's denial of plaintiff's claim was motivated by a conflict of interest. *Montour*, 588 F.3d at 630–31. Here, the administrative record weighs against such a finding. It is undisputed that Unum paid plaintiff benefits for six years. (Unum paid plaintiff an additional three months worth of benefits after the termination date as well (AR 2113).) Plaintiff makes no specific arguments concerning conflict of interest; she solely points to facts pertaining to whether Unum abused its discretion (Opp. 18–21), which will be discussed below. There is no evidence in the administrative record that a conflict of interest motivated the decision in question.

**2.      Quality and Quantity of Medical Evidence, Method of Medical Evaluation, and Information Considered by Unum's Experts**

This order must also consider the quality and quantity of medical evidence, the method of medical evaluation, and the information considered by Unum's experts preceding Unum's decision to terminate plaintiff's benefits on December 17, 2008. *Montour*, 588 F.3d at 630.

Three doctors reviewed plaintiff's file for Unum preceding the termination of plaintiff's benefits: Drs. Bress, Stentef, and Dean. They reviewed all of the information in plaintiff's file, including reports from plaintiff's doctors and plaintiff herself (*see* AR 1933, 1937, 1988, 2016, 2050, 2314). There is no evidence that they did not review all available material. Dr. Bress contacted Dr. Head for additional information, and was told: "[Patient] states 'continued fatigue which limits [her] ability to work'" (AR 1958). Drs. Bress, Stentef, and Dean did not interview

7

1    or examine plaintiff themselves.  This choice does not "raise[] questions about the thoroughness
2    and accuracy of the benefits determination," to constitute an abuse of discretion, because there
3    is no question about whether the Unum doctors reviewed "all of the relevant evidence" in
4    plaintiff's file.  *Montour*, 588 F.3d at 634 (citation and quotation marks omitted).  The "pure
5    paper" review by itself does not constitute an abuse of discretion by Unum.

6          Counsel points out that "[n]one of [the three] doctors [who reviewed plaintiff's file]
7    voice[d] any disagreement with the diagnosis or symptoms reported by any of [her] treating
8    physicians" (Opp. 18).  Putting the two 2009 post-termination reports aside for the moment,
9    counsel attributes diagnoses to plaintiff's treating physicians that were *not* actually in their
10   reports.  As can be seen from the review above, for two years prior to Unum's termination of
11   benefits, the reports of plaintiff's treating physician Dr. Head only included *notes of symptoms*
12   *reported by plaintiff herself*.  They were not attributed by Dr. Head to anything specifically or
13   verified by tests.  This is the definition of self-reported symptoms, under the plan.

14         Plaintiff also argues Unum should not have credited the opinions of Drs. Bress, Stentef,
15   and Dean over those of plaintiff's treating physicians, oncologist Dr. Bobbie Head and
16   psychiatrist Dr. Laura Duffy.  Plaintiff presents the reports of Drs. Head and Duffy submitted to
17   Unum during plaintiff's appeal.

18         Consistent with her prior reports, Dr. Head stated that during her most recent
19   examination, "*Ms. Corby noted* continued complaints of joint pain, fatigue, and the continued
20   inability to concentrate for long periods of time" (emphasis added).  Dr. Head continued that
21   plaintiff is one of "a subset [of women] in whom the [chemo]therapy results in debiliating
22   unremitting symptoms that can last for years."  Dr. Head referred generally to "debilitating
23   fatigue" at the time of chemotherapy, alluded to this as the referenced ongoing symptom, and
24   stated that this prevents plaintiff from "doing the main duties of her former occupation" as well
25   as "any similar type of job on a full-time basis" (AR 2175).  A progress note from March 2009
26   — which also fell between the initial termination of benefits and plaintiff's appeal — stated that
27   plaintiff stopped taking Tamoxifen in January of 2009 but that plaintiff's symptoms had not
28

8

1    improved (AR 2176). It appears that since that time plaintiff has solely been on an anti-
2    depressant medication.
3           Unum did not abuse its discretion by crediting the opinions of Drs. Bress, Sentef, and
4    Dean in the face of this evidence on plaintiff's appeal. Again, reports of plaintiff's symptoms
5    continued to be based on her statements and not verified by testing. Though Dr. Head
6    embraced the theory that chemotherapy can cause "debiliating unremitting symptoms that can
7    last for years," Unum did not abuse its discretion in finding that under the terms of the plan,
8    such symptoms have to be "verifiable using tests, procedures or clinical examinations
9    standardly [sic] accepted in the practice of medicine" (AR 97). Such verification did not occur.
10          Plaintiff also refers to the report of Dr. Duffy, who only began treating plaintiff in
11   February 2009. Dr. Duffy's report stated:

> [Plaintiff's] most recent episode of depression occurred in the context of a diagnosis of breast cancer and subsequent treatment with estrogen-inhibiting medications. . . . Ms. Corby was having multiple symptoms of depression . . . Her depression was clearly interfering with both occupational and social functioning. Additionally she was suffering from significant joint pain related to her medications. . . . (AR 2183).

This report in fact *supports* Unum's alternative ground for terminating benefits — that plaintiff had already been provided wih 24 months of benefits for disability due to mental illness. Again, "mental illness" is defined in the plan as "a psychiatric or psychological condition regardless of cause such as . . . depression . . . These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment" (AR 95). Dr. Duffy's statement that plaintiff's joint pain was "related to her medications" is confusing, as plaintiff was only on an anti-depressant medication after January 2009; regardless, this statement was not verified by tests.

       Cancer had not recurred in plaintiff through the termination of benefits. On appeal to Unum, plaintiff submitted results of a CT scan and echo cardiogram from UCSF Medical Center from April 2009 (AR 2191–96). Plaintiff now asserts that these document a "'mobile mass' in the right atrium of plaintiff's heart, and [a] lung nodule and new breast lesion" (Opp. 13). Though Dr. Duffy's July 2009 report makes mention of these new tests, Dr. Head, plaintiff's oncologist, did not refer to them in her report. Plaintiff does not (1) substantiate the

9

meaning of these tests, or (2) cite any authority for why these new tests would warrant the retroactive continuation of benefits, nor did she in her appeal to Unum (AR 2174). This is speculation. This order does not dismiss the seriousness of any potential recurrence of cancer, but simply finds that these medical records do not make Unum's termination decision improper.

### 3. Regardless of Whether the California Settlement Agreement Applies, Unum Did Not Abuse Its Discretion in Terminating Benefits

Plaintiff argues that according to a California Settlement Agreement between Unum and the California Insurance Commissioner, the self-reported and mental illness provisions of the plan cannot apply to plaintiff. This Agreement, among other things, discontinued the application of self-reported provisions in California contracts altogether, and limited the mental illness provisions in California contracts to only apply 24 months after the termination of any physiological-based disabling condition (AR 2282). At oral argument, the parties disputed the effective date of the agreement as applied to plaintiff's claim. Further briefing was provided on the issue (Dkt. Nos. 51–52, 54). It is undisputed that the application of the California Settlement Agreement would only affect the termination of plaintiff's benefits based on the self-reported symptoms and mental illness limitation in the plan.

Regardless of whether the California Settlement Agreement applies or not, Unum did not abuse its discretion in terminating plaintiff's benefits on its alternative ground that she was no longer "limited from performing the material and substantial duties of [her] regular occupation due to [] sickness or injury" (AR 76). The record shows that plaintiff did not have cancer after 2003, was only seeing her treating oncologist every six months for several years preceding the termination of benefits, and was not being treated regularly by a psychiatrist (even though she had one). Plaintiff began a new career as a real estate agent, and though she continued to state that her fatigue prevented her from working full-time, Unum did not abuse its discretion in crediting its reviewing doctors' statements that plaintiff was capable of full-time light work. Plaintiff was only taking medication to inhibit the recurrence of cancer in the years preceding the termination, and her oncologist's reports do not evidence debilitating sickness or injury. Even the statements of plaintiff's treating physicians submitted to Unum on appeal are

1  not convincing that plaintiff cannot perform the material and substantial duties of her regular

2  occupation. In any event, Unum did not abuse its discretion in so finding.

3        Plaintiff also states that Unum abused its discretion because it has taken inconsistent

4  positions in this case, given that it once provided benefits and has, over time, credited medical

5  statements attributing symptoms to her cancer treatment. The point is that there are no longer

6  medical statements attributing symptoms to her cancer treatment. Plaintiff cites nothing for the

7  proposition that it is an inconsistent abuse of discretion to provide benefits and then, several

8  years later, terminate them.

9        Having considered the abuse of discretion factors set forth in *Montour*, this order finds

10 that the administrative record demonstrates that Unum did not abuse its discretion in

11 terminating plaintiff's benefits on December 17, 2008.

12 **C.     Penalties for Failure to Supply Requested Information**

13       Plaintiff claims she is entitled to penalties because defendant Wink Communications

14 failed to provide documents that it was legally obligated to provide. A plan administrator:

> who fails or refuses to comply with a request for any information which
> such administrator is required by this subchapter to furnish to a participant
> or beneficiary (unless such failure or refusal results from matters
> reasonably beyond the control of the administrator) by mailing the
> material requested to the last known address of the requesting participant
> or beneficiary within 30 days after such request may in the court's
> discretion be personally liable to such participant or beneficiary in the
> amount of up to $100 a day from the date of such failure or refusal, and
> the court may in its discretion order such other relief as it deems proper.

20 29 U.S.C. 1132(c)(1)(B); *see* 29 U.S.C. 1132(a)(1)(A). The sole request for information at

21 issue is a letter dated August 4, 2009, in which plaintiff's counsel requested various documents

22 — listed in the letter as ten categories of documents — related to plaintiff's claim. Plaintiff's

23 complaint states that "defendant [Wink Communications] has refused, and continues to refuse,

24 to provide plaintiff with the requested documents." Yet it is undisputed that many documents

25 have been provided to plaintiff in response to her requests.

26       Plaintiff's sole statement concerning what documents were not produced is: "the plan

27 administrator has produced no documents in response to categories 3, 6, 7, 8 or 9, and it is

28

*United States District Court*
For the Northern District of California

1 difficult to believe that no such documents exist" (Opp. 23). The content of those categories is:

> 3) copies of all documents relating in any way to the renewal of the policy/ Plan at issue since the Plan first purchased coverage from UNUM or any of its related companies;
> 6) all documents, materials or other writings which were submitted, considered, or generated in the course of making the decision to terminate, or uphold the decision to terminate, Ms. Corby's claim, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
> 7) any and all contracts or other documents under which my client's Long Term Disability Plan has been established, operated or administered (see, *Hughes Salaried Retirees Action Committee v. Administrator of The Hughes Non-Bargaining Retirement Plan*, 72 F.3d 686 (9th Cir. 1995), where the court defined the universe of documents subject to disclosure under ERISA § 104(b)(4) as those "which describe the terms and conditions of the Plan, as well as its administration and financial status");
> 8) any and all documents, or contracts between the Plan and/or Wink Communications, Inc., and/or UNUM, establishing or amending the Plan, and those establishing or setting forth any claims policies or procedures;
> 9) any and all documents setting forth all financial arrangements among the Plan and/or Wink Communications, Inc., and/or UNUM (i.e., documents relating to payment of premiums, processing and/or monitoring of Plan claims, etc.). (See, ERISA sections 104, 402, 404 and Dept. of Labor Opinion 97--11A.).

(Opp. Exh. 1 (bold omitted).) Plaintiff agrees that defendants furnished the Plan, the claim file, the claim manual, and Form 5500s (Opp. 23). The authority cited by plaintiff in the letter does not provide any support for the notion that defendant Wink Communications was required to produce anything else. *See Hughes Salaried Retirees Action Committee v. Administrator of Hughes Non-Bargaining Retirement Plan*, 72 F.3d 686 (9th Cir. 1995) (a plan administrator is not required to furnish plan participants with the names and addresses of other plan participants). Plaintiff cites no further authority in her opposition.

Plaintiff is entitled to "know[] exactly where [s]he stands with respect to the plan." *Firestone*, 489 U.S. at 118 (citation omitted). There is no evidence that she is missing any information. There is therefore no genuine issue of material fact concerning what Wink Communications did and did not provide, and defendants are entitled to judgment as a matter of law that they did not run afoul of 29 U.S.C. 1132(a)(1)(A).

## CONCLUSION

As outlined above, the record contains no genuine issues of material fact and defendants are entitled to judgment as a matter of law. Defendants' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

Dated: September 21, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE